**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hedy Bahe, | No. CV-17-08016-PCT-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Office of Navajo and Hopi Indian Relocation, | |
| Defendant. | |

Plaintiff Hedy Bahe, on behalf of her deceased husband, Jerry Bahe, seeks judicial review of the administrative decision by Defendant Office of Navajo and Hopi Indian Relocation (ONHIR) denying Plaintiff relocation benefits under the Navajo-Hopi Settlement Act. (Doc. 1.) Before the Court are the parties' cross-motions for summary judgment. (Docs. 18, 20.) The motions are fully briefed and neither side requested oral argument. (Docs. 24, 26.) For the reasons stated below, summary judgment is granted in favor of Defendant and its decision denying benefits is affirmed.

## BACKGROUND

### I.  Navajo and Hopi Relocation Assistance

In 1882, a reservation was established in northeastern Arizona for the Hopi Nation and "such other Indians as the Secretary of Interior may see fit to settle thereon." *Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121 (9th Cir. 1989). Members of the Navajo Nation subsequently settled on the reservation alongside the

Hopi. *Id.* "The Hopi and Navajo [Nations] coexisted on the 1882 reservation for 75 years, but became entangled in a struggle as to which [nation] had a clear right to the reservation lands." *Id.* In 1962, this district court found that the two tribes held joint, undivided interests in most of the reservation, which was called the "joint use area" (JUA). *Id.*

Twelve years later, after establishment of the JUA failed to solve inter-tribal conflicts over the land, Congress passed the Navajo-Hopi Settlement Act in 1974. *Id.* The Act authorized the district court to make a final partition of the reservation after mediation efforts between the nations had failed. *See Sekaquaptewa v. MacDonald*, 626 F.2d 113, 115 (9th Cir. 1980.) The Act also directed creation of the ONHIR's predecessor, the Navajo-Hopi Relocation Commission, to provide services and benefits to help relocate residents who were located on lands allocated to the other nation as a result of the court-ordered partition. *See Bedoni*, 878 F.2d at 1121-22; 25 U.S.C. § 640d-11. To be eligible for relocation benefits, a Navajo applicant bears the burden of demonstrating that he or she was (1) a legal resident on the Hopi Partitioned Lands (HPL) on December 22, 1974, and (2) a head of household on or before July 7, 1986. 25 C.F.R. § 700.147.

## II. Facts and Procedural History

In May 2005, Jerry Bahe, a member of the Navajo Nation, applied for relocation benefits. (A.R. 19-22.) In October 2005, ONHIR denied Bahe's application, finding that he "did not reside on [HPL] on December 22, 1974." (*Id.* at 24-26.) In November 2005, Bahe timely appealed ONHIR's decision. (*Id.* at 35.) Bahe died in 2006, after which Plaintiff continued to pursue the claim pursuant to ONHIR's surviving spouse policy. An independent hearing officer (IHO) held an appeal hearing in November 2010, at which Plaintiff, an ONHIR investigator, and other witnesses testified. (*Id.* at 52-86.)

In February 2011, the IHO issued a written opinion upholding the ONHIR's denial, finding that "[t]he greater weight of evidence shows that, on December 22, 1974, [Jerry Bahe] was a legal resident of Jeddito Island, an area which was later partitioned for

the use of the Navajo [Nation]." (*Id.* at 106-07.)    The IHO's ruling became Defendant's final decision when it affirmed the ruling on July 18, 2011. (*Id.* at 111.)  Plaintiff then commenced this action for judicial review pursuant to 25 U.S.C. § 640d-14(g) and the Administrative Procedure Act (APA), 5 U.S.C. § 701 et. seq. (Docs. 1, 18.)

## STANDARD OF REVIEW

In reviewing a federal agency's decision under the APA, the district court applies a "narrow and deferential" standard of review. *Mike v. ONHIR*, No. CV-06-0866-PCT-EHC, 2008 WL 54920, at *1 (D. Ariz. Jan. 2, 2008).  A reviewing court may reverse an ONHIR decision under the APA if it is arbitrary, capricious, an abuse of discretion, contrary to law, or unsupported by substantial evidence.  5 U.S.C. § 706(2)(A), (E); *see Bedoni*, 878 F.2d at 1122.  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Mike*, 2008 WL 54920, at *1 (quoting *Info. Providers' Coalition for Def. of First Amendment v. FCC*, 928 F.2d 866, 870 (9th Cir. 1991)).  Under the arbitrary and capricious standard, courts must determine whether the agency's decision "was based on consideration of relevant factors and whether there has been a clear error of judgment." *Id.* (citing *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.2d 1468, 1471 (9th Cir. 1994)).

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Where the court reviews an agency decision under the APA, "the focal point [] should be the administrative record already in existence, not some new record made initially [by] the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142-43 (1973).  Thus, when conducting "judicial review pursuant to the APA, 'summary judgment is an appropriate mechanism for deciding the legal question of whether [ONHIR] could reasonably have found the facts as it did.'" *O'Daniel v. ONHIR*, No. 07-354-PCT-MHM, 2008 WL 4277899, at *3 (D. Ariz. Sept. 18, 2008) (citing *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 770 (9th Cir. 1985)).

## DISCUSSION

On appeal, Plaintiff makes four arguments: (1) the IHO applied an incorrect legal standard when assessing whether Plaintiff was a resident of HPL at the time of the statutory cut-off date; (2) even if the IHO applied the correct legal standard, his decision is not supported by substantial evidence; (3) the IHO's credibility findings are arbitrary and capricious; and (4) the ONHIR breached its fiduciary duty to Plaintiff. The Court addresses each in turn.

### I. The IHO Applied the Proper Legal Standard for Determining Residence

To be eligible for relocation assistance benefits, agency regulations require that applicants prove their timely residency on HPL. § 700.147 ("The burden of proving residence . . . is on the applicant."). Plaintiff argues that in determining legal residence courts must apply the same standards used in determining domicile for purposes of diversity jurisdiction because legal residence and domicile are functionally equivalent. (Doc. 18 at 4-12.) As part of this argument, Plaintiff asserts that once a plaintiff has established her domicile on HPL the burden shifts to Defendant who, in order to deny benefits, must demonstrate the plaintiff changed her legal residency prior to the December 22, 1974 cut-off date. (*Id.* at 5, *citing Premier Funding Grp. LLC v. Aviva Life and Annuity Co. et al.*, No. CV-14-01633-PHX-DGC, 2014 WL 6885732 at *2 (D. Ariz. Oct. 27, 2014).)

As an initial matter, Plaintiff's argument as to the proper legal standard for determining residency has been waived. As noted above, after Plaintiff's claim for relocation benefits was denied by the ONHIR, Plaintiff filed an administrative appeal challenging "whether [Bahe and Plaintiff] were legal residents of the [HPL] on December 22, 1974." (A.R. 90.) Plaintiff's appeal did not, however, challenge the legal standard used to determine Plaintiff's residency. (*Id.* at 96-99.) After the IHO issued a written opinion on the appeal, Plaintiff failed to request reconsideration, and the agency adopted the IHO's opinion as its final decision. (*Id.* at 111.) Now, for the first time on appeal, Plaintiff challenges the legal standard used by the IHO. Where, as here, a petitioner in an

administrative proceeding fails to raise an issue before the administrative tribunal, the issue cannot be raised on appeal from that tribunal. 5 U.S.C. § 704 (provides for judicial review of "final agency action"); *Darby v. Cisneros*, 509 U.S. 137, 146 (1993) (finding that APA "explicitly requires exhustion of all intra-agency appeals mandated either by statute or by agency rule"); *Reid v. Engen*, 765 F.2d 1457, 1460 (9th Cir. 1985) (noting that "[a]s a general rule, if [plaintiff] fails to raise an issue before an administrative tribunal, it cannot be raised on appeal from that tribunal."). The Court finds Plaintiff's argument on this issue waived.

Assuming, *arguendo*, that Plaintiff has not waived this argument, her position fails on its merits. The objective of the Settlement Act is "[t]o insure that persons displaced as a result of the Act are treated fairly, consistently, and equitably." § 700.1(a). To qualify as displaced, an applicant must have lived on HPL as of December 22, 1974. Agency procedures highlight that the rule "limit[s] determination of residence to a specific point in time, December 22, 1974." 49 Fed. Reg. 22277-01 (May 29, 1984). The regulation places the "burden of proving residence . . . on the applicant." § 700.147(b). Read in conjunction, the agency regulations and procedures require that Plaintiff establish residency as of the cut-off date. Plaintiff's burden shifting framework is inconsistent with the language of § 700.147(b) and agency procedures.

## II. Defendant's Decision is Supported by Substantial Evidence

The IHO's determination that Plaintiff did not reside on HPL during the relevant time period is supported by substantial evidence. The IHO found as follows: Although Plaintiff and Bahe initially lived together on HPL, Bahe was unable to care for his livestock, tend his fields, or assist in daily childrearing because his work took him away from the home site for extended periods. To get help with daily chores, the family moved to Plaintiff's parents' home site on Navajo Partitioned Lands (NPL) in what later became known as Jeddito Island. Bahe informed the ONHIR investigator that this move happened sometime after his mother died in 1957. (A.R. 103-09.)

Plaintiff contends that the IHO's decision was not supported by substantial

evidence for three reasons: (1) the IHO improperly concluded that Plaintiff returned to her family's home site after her youngest daughter, Carol, was born in 1960; (2) the IHO misrepresented ONHIR memoranda on conversations with Bahe; and (3) a Bureau of Indian Affairs (BIA) enumeration roster cannot be the sole basis for the ONHIR's finding. (Doc. 18 at 9-13.) None of these arguments are persuasive.

## A. Plaintiff's Move to NPL After 1960

As part of his findings, the IHO noted, "[Plaintiff] testified that, after the birth of her daughter Carol in 1960, she suffered an illness which required hospitalization so Carol was raised by [Plaintiff's] grandmother." (A.R. 107.) Plaintiff contends that the IHO assumed, without supporting evidence, that Plaintiff moved to NPL with her daughter Carol "because Plaintiff would likely have needed her mother's help with chores, given that Plaintiff was sick and Jerry was way at work." (Doc. 18 at 9, *referencing* A.R. 107-09.) Plaintiff argues that this assumption is unreasonable given the record before the IHO. In particular, when asked about Carol's schooling, Plaintiff testified:

> When I had Carol, after that I became extremely ill. I had to go into a hospital and I didn't know what to do with [Carol] so I gave her to her [maternal] grandmother to care for and so I don't really know all that took place, so if there's a question then perhaps Carol will answer that.

(A.R. 64-65.) Plaintiff contends that she was unable to answer because she did not move with Carol to Plaintiff's mother's home site in 1960. (Doc. 18 at 9.)

Substantial evidence, however, is "'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Akee v. ONHIR*, 907 F. Supp. 315, 318 (D. Ariz. 1995) (quoting *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966)). Stated differently, an agency's decision "need only be reasonable, not the best or most reasonable, decision." *Nat'l Wildlife Fed'n v. Burford*, 871 F.2d 849, 855 (9th Cir. 1989). Here, the IHO's finding was reasonable given the record as a whole. For example, Plaintiff testified that (1) Bahe

hardly spent time at home because work took him away for up to a month at a time; (2) the family had horses, sheep and cornfields that needed tending; and (3) Bahe and Plaintiff were raising their four children. (A.R. 56.) Additionally, Bahe told ONHIR that his family moved to Plaintiff's mother's home site after his mother died in 1957. (*Id.* at 4,6.) Given the entire record, the IHO's conclusion that Plaintiff moved to NPL to get help caring for her family and livestock after becoming ill is reasonable and supported by substantial evidence.

**B. ONHIR Memoranda**

Plaintiff argues that the IHO misinterpreted ONHIR memoranda, and that the contents of these documents show that Plaintiff was a legal resident of HPL at the December 22, 1974 cut-off date. (Doc. 18 at 9-11.) The memoranda at issue were created by an ONHIR investigator to serve as a contemporaneous recording of the contents of his conversations with Bahe in 1989-90. (A.R. 4, 6.)

In support of her argument, Plaintiff notes that, according to the 1990 ONHIR memorandum: "[Bahe] left Jeddito *sometime after* his mother died." (*Id.* at 6) (emphasis added). At the hearing, ONHIR counsel stated, without explanation, that:

> Our position is that we have no evidence that the family lived on [HPL] as of December 22, [1974] . . . [and] we have in the file . . . that Mr. Bahe *moved away shortly after his mother died in 1957* and that while he may well have been a resident many, many years ago, that he wasn't a resident of [HPL] as of . . . 12/22/1974.

(A.R. 62) (emphasis added). The IHO adopted this characterization, again without explaining why "sometime after" meant "shortly after." (*Id.* at 108) ("Bahe said that, *shortly after his mother died in 1957*, the family moved to [Plaintiff's] family's homesite") (emphasis added). Plaintiff argues that, in doing so, the IHO made an unwarranted inference that the move happened sooner rather than later.

Isolating a single sentence from the IHO's decision, Plaintiff argues that the IHO mischaracterized the record. In making his determination, however, the IHO must consider the record as a whole, including the evidence indicating that Plaintiff moved to

NPL after her last child was born in 1960. The IHO's characterization of Plaintiff's relocation as occurring shortly after 1957 is reasonable given the corroborating evidence that Plaintiff moved in 1960 because she became ill.

Plaintiff also argues that "[t]he IHO and ONHIR are bound by the contents of [the memoranda] which demonstrate that the Bahe family were legal residents of the HPL at the passage of the Settlement Act." (Doc. 18 at 11.) Plaintiff, however, fails to point to any statements from the memoranda that offer such evidence, and the Court finds none. (A.R. 4, 6.)

**C. BIA Enumeration Roster**

In 1974 and 1975 the BIA set out to enumerate Navajo and Hopi members living on the JUA.[1] The BIA's enumeration roster showed that Bahe resided on NPL as of December 22, 1974. (A.R. 90-92.) The roster also showed no improvements[2] for the Bahe family in the specific area of the HPL which Plaintiff claims to have resided, and stated that there is no record of Plaintiff having any residence on any other part of HPL. (*Id.* at 92.)

Notably, Plaintiff does not refute the enumeration roster's findings. Rather, Plaintiff asserts that the BIA enumeration roster is the *only* evidence supporting the IHO's decision. Citing an ONHIR report, Plaintiff argues that the BIA enumeration roster is an unreliable metric and thus cannot serve as substantial evidence if offered as the sole piece of evidence when determining an applicant's eligibility. (Doc. 18 at 11 (citing Navajo-Hopi Indian Relocation commission Report and Plan, April 1981, Ch. III,

---

[1] Between June and August 1974, the BIA took aerial photographs of the JUA. Using these photographs, the BIA identified and marked the precise locations of structures on USGA maps. Between December 1974 and June 1975, the BIA conducted a ground survey in which it traveled to each structure identified on the USGA maps, interviewed the residents, and recorded residents' personal information. In the event that a structure was found unoccupied, surveyors would return on multiple occasions in an effort to ensure no one was missed. The data collected by the surveyors constitutes the BIA enumeration roster. *See* William E. Simpkin, et. al, Hopi-Navajo Land Dispute: Public Law 93-531: Mediator's Report and Recommendations, Vols. I-III (1975).

[2] For purposes of the regulations, "improvements are structures and attached fixtures to the land owned by a member of a household required to relocated under the terms of the Act." 25 C.F.R. § 700.71.

Enumeration Methodology, at 71).)

The IHO's decision, however, is not based solely on the BIA enumeration roster. It also is supported by Plaintiff's testimony and Bahe's statements to ONHIR. Considering the record as a whole, and giving due deference to the IHO's factual findings, the Court finds that the IHO's conclusion that Plaintiff was not a legal resident of the HPL as of December 22, 1974 is supported by substantial evidence.[3]

### III. Defendant's Credibility Findings Are Not Arbitrary or Capricious

Plaintiff also challenges the IHO's credibility findings. She asserts that the IHO arbitrarily and capriciously credited the ONHIR Investigator's testimony and discredited her own without providing specific and cogent reasons for doing so. *See De Valle v. I.N.S.*, 901 F.2d 787, 792 (9th Cir. 1990) (observing that in order to reject testimony for lack of credibility, an administrative judge must set forth specific and cogent reasons). "The arbitrary and capricious standard is highly deferential, [it] presum[es] the agency action to be valid and requires affirming the agency action if a reasonable basis exists for its decision." *Kern Cnty. Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006). Applying this standard, the Court finds that the IHO's credibility findings are reasonable.

Plaintiff testified about raising her family in Jeddito, the circumstances of her husband's absences from the home site, and the reason for the family's decision to leave Jeddito and relocate to Jeddito Island. (*Id.* at 105.) The IHO found Plaintiff to have limited credibility because "her testimony about remaining at the HPL Jeddito homesite . . . is not supported by any physical or photographic evidence, her testimony is inconsistent with [] Bahe's statements in connection with his application for relocation assistance, [and] her testimony is inconsistent with events that occurred from and after 1960." (*Id.*) These reasons are specific and cogent, and supported by substantial evidence. Though Plaintiff identified the contents of several photographs allegedly showing her HPL home site, she did not testify to the date the photographs were taken. It

---

[3] Because the IHO's decision is supported by other evidence, the Court need not decide whether the BIA enumeration roster alone offers sufficient evidence to support a decision.

was not unreasonable for the IHO to discount the significance of these undated photographs when evaluating the credibility of Plaintiff's testimony. Additionally, Plaintiff's testimony that her family remained on HPL as of the December 22 cut-off date contradicted the BIA enumeration roster, which reflects that in early 1975 Bahe stated that his family had only one home site and that it was located on NPL. Finally, as previously discussed, the IHO's conclusion regarding Plaintiff's actions in 1960 were reasonable and supported by the evidence. The IHO's credibility finding is neither arbitrary nor capricious.

Plaintiff also asserts that the IHO did not provide specific and cogent reasons for crediting the ONHIR Investigator's testimony. (Doc. 18 at 14-15.) But the law requires only that administrative judges offer specific and cogent reasons for adverse credibility findings. *See e.g.*, *Stoyanov v. INS*, 172 F.3d 731, 736 (9th Cir. 1999) (the Board must offer a "legitimate articulable basis" for an adverse credibility finding and "must offer a specific cogent reason for any stated disbelief"); *Sebastian-Sebastian v. INS*, 195 F.3d 504, 518 (9th Cir. 1999) (noting that an administrative judge who rejects testimony for lack of credibility must offer a specific, cogent reason' for the rejection). Plaintiff cites no cases applying this standard to favorable credibility findings, and the Court finds none.

**IV.  Breach of Fiduciary Duty**

Lastly, Plaintiff asserts that Defendant breached its fiduciary duty by failing to advise Bahe to apply for benefits in 1989 and 1990, and by not adjudicating his application sooner. (Doc. 18 at 15-17.) As an initial matter, Plaintiff's argument is waived because she did not raise it during the administrative proceedings. *See* 5 U.S.C. § 704; *Darby*, 509 U.S. at 146; *Reid*, 765 F.2d at 1460. Her argument also fails on the merits for at least three reasons.

First, Plaintiff's breach of fiduciary duty claim is based on facts outside the administrative record. She asserts that the ONHIR failed to advise Bahe to apply for benefits when he called the agency in 1989 and 1990. Yet, the record is silent about

what, if anything, ONHIR advised Bahe to do. *See Ranchers Cattlemen Action Leg. Fund United Stockgrowers of Am. v. U.S. Dept. of Agr.*, 499 F.3d 1108, 1117 (9th Cir. 2007) (APA review limited to facts contained in the record).

Second, assuming Defendant failed to advise Bahe to apply for benefits in 1989 and 1990, such inaction does not constitute a breach of fiduciary duty.[4] Agency regulations allowed for applications to be filed up until July 7, 1986. *See* 51 Fed. Reg. 19169 (May 28, 1986). Although Plaintiff claims that Defendant had a fiduciary duty to advise Bahe in 1989 and 1990, by that time the deadline to apply for benefits had already expired three years prior. Therefore, such advice would have been futile. It is only because the ONHIR offered select tribal members the opportunity to submit a request for benefits in 2005 that Bahe had another chance to apply. (A.R. 12); 25 C.F.R. § 700.138.

Finally, Plaintiff's assertion that the ONHIR caused an unnecessary five-year hearing delay which made putting on the requisite evidence overly burdensome and unfair does not rise to the level of a breach of a fiduciary duty. *See Laughter v. ONHIR*, No. CV-16-8196-PCT-DLR, 2017 WL 2806841, at *5 n.3 (D. Ariz. June 29, 2017) (rejecting a breach of fiduciary duty claim based on a delay in proceedings).

## CONCLUSION

Defendant's decision denying Plaintiff relocation benefits is reasonable and supported by substantial evidence. Accordingly,

//

//

//

//

//

---

[4] In support of her argument, Plaintiff cites *Herbert v. ONHIR*, No. 06-CV-03014-PCT-NVW, 2008 WL 11338896, at *1 (D. Ariz. Feb. 27, 2008), arguing that it addressed "a near identical situation." (Doc. 24 at 14.) The Court finds *Herbert* readily distinguishable because the claimant in that case was otherwise qualified for relocation benefits. *Herbert*, 2008 WL, at *4; *see also Bedoni*, 878 F.2d at 1124-26 (noting that ONHIR had a trust responsibility to claimant who qualified for relocation). Here, Plaintiff has failed to meet her burden for qualification.

**IT IS ORDERED** that Plaintiff's motion for summary judgment (Doc. 18) is **DENIED** and Defendant's cross-motion for summary judgment (Doc. 20) is **GRANTED**. Defendant's administrative decision denying Plaintiff's application for relocation benefits is **AFFIRMED**. The Clerk shall enter judgment accordingly and terminate this case.

Dated this 28th day of December, 2017.

Douglas L. Rayes
United States District Judge